UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

JANICE RAZZANO,

                  *Plaintiff*,

   -against-

                             **MEMORANDUM AND ORDER**
                             11-CV-2920 (KAM)

REMSENBURG-SPEONK UNION FREE SCHOOL
DISTRICT, KATHERINE SALOMONE, THOMAS
KERR, LISA FOX, KEVIN FEDERICO, CECELIA
SPELLMAN-FREY, JOEL PETERSON, RONALD M.
MASERA, and JOHN KERN in their official
and individual capacities,

                  *Defendants*.

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        On June 17, 2011, plaintiff Janice Razzano commenced
this action, bringing claims of disability discrimination and
retaliation pursuant to the Americans with Disabilities Act of
1990 ("ADA") and the New York State Human Rights Law, N.Y. Exec.
Law §§ 290 *et seq.* ("NYSHRL"), and alleging an Equal Protection
violation pursuant to 42 U.S.C. § 1983.  Plaintiff alleges
discrimination and retaliation by the Remensburg-Speonk Union
Free School District ("School District," "school," or
"district"),[1] School District superintendent and principal

---

[1]    The school district is comprised of one elementary school.

through 2010, Dr. Katherine Salomone, School District Board of Education ("Board") president Thomas Kerr, Board vice president Lisa Fox, and Board members Kevin Federico, Cecelia Spellman-Frey, and Joel Peterson.  (Plaintiff's Complaint ("Compl.") at 1-2, ECF No. 1.)  On October 7, 2011, plaintiff filed an amended complaint, raising the same claims but adding the current School District superintendent and principal, Ronald M. Masera, and Board member John Kern, as defendants.  (Plaintiff's Amended Complaint ("Am. Compl.") at 1-2, ECF No. 2.)

On February 14, 2017, Judge Wexler dismissed plaintiff's claim *sua sponte*, "pursuant to the decision rendered by the New York State Appellate Department, plaintiff's failure to respond to requests of her counsel, and plaintiff's failure to prosecute."  (Minute Entry of Judge Leonard Wexler, dated February 14, 2017.)  Judge Wexler later clarified that the Appellate Division's decision precluded plaintiff's complaint "under the doctrines of res judicata and collateral estoppel." (Minute Entry of Judge Leonard Wexler, dated November 13, 2017.) Plaintiff appealed Judge Wexler's dismissal.  (Notice of Appeal by Janice Razzano, ECF No. 27.)  On appeal, the Second Circuit held that the sanction of dismissal for failure to prosecute was unsupported by the record, that dismissal on claim preclusion grounds was unsupported by the underlying claims raised at the state and administrative levels, and that dismissal on issue

preclusion grounds was not supported by an administrative transcript demonstrating that the issues raised at the federal level were fully litigated in the administrative action. *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, 751 F. App'x 24 (2d Cir. 2018). Accordingly, the Second Circuit vacated the judgment and remanded for reconsideration of the issues on a more fully developed record. *Id.* at 28.

Presently before the court is defendants' motion for summary judgment. (Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem."), ECF No. 58-3.) For the reasons provided below, the court grants defendants' motion for summary judgment.

<u>**BACKGROUND**</u>

The following timeline of events is taken from the parties' filings and statements pursuant to Local Civil Rule 56.1.[2] The court has considered whether the parties have proffered admissible evidence in support of their positions and

---

[2]     Local Civil Rule 56.1 provides that a party moving for summary judgment "shall annex[] to the notice of motion a separate, short and concise statement," "of the material facts to which the moving party contends there is no genuine issue to be tried." The party opposing the motion must "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party" with the opposition. Each of these paragraphs must cite to admissible evidence. Local Civ. R. 56.1(a)-(c). Plaintiff relies upon incorrect hearsay objections for the majority of her 56.1 statement. In addition, facts that were not contradicted by citations to admissible evidence are deemed admitted. *See Ferraro v. New York City Dep't of Educ.,* 404 F. Supp. 3d 691, 698 (E.D.N.Y. 2017), *aff'd,* 752 F. App'x 70 (2d Cir. 2018)(*citing Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party ... fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").).

has viewed the facts in a light most favorable to the plaintiff, the nonmoving party.

## I.   Factual Background

The Board of Education of the Remsenburg-Speonk Union Free School District is a municipal corporation of the State of New York. (N.Y. Ed. Law § 1701); *see C.K. v. Bd. of Educ. of the Westhampton Beach Sch. Dist.*, 185 F. Supp. 3d 317, 321 (E.D.N.Y. 2016).  The School District consists of a single elementary school.  (Def. Mem. at 2.)

In 2009, plaintiff complained of persistent coughing while at school, the cause of which was undetermined.  (Def. 56.1 Stm't ¶ 5, ECF No. 58-2.)  It is undisputed that the school conducted multiple environmental tests and found no evidence of an environmental cause for plaintiff's complaints.[3]  (*Id.* ¶ 6.)

---

[3]      Plaintiff argues that the lack of an environmental cause for plaintiff's illness is a "disputed conclusion" based on environmental expert J.C. Broderick & Associates' statement that:

> "[T]his inspection and sampling are limited in that it only reports the presence and conditions of the parameters analyzed at the time the inspection and sampling was performed.  Although every attempt was made to collect the samples at a time which is most representative of the typical conditions of the subject spaces, these results cannot guarantee the conditions prior to, and subsequent to, when the samples were collected.  If the occupant's concerns and/or symptoms persist, further investigation, including more expansive air monitoring and collaboration with the occupant's physician is recommended[.]"

(Pl. Objections to Defs' 56.1 Stm't ("Pl. 56.1 Stm't") ¶ 6, ECF No. 59-1.)
      The court rejects plaintiff's characterization of the conclusion of the environment assessment as "disputed."  First, the statements plaintiff cites indicate only the common sense understanding that a one-day test cannot account for environments that change from day to day. Second, the expert noted that it nonetheless made every attempt "to collect the samples at a time which [was] most representative of the typical conditions of the subject spaces."

On November 14, 2009, plaintiff filed a complaint with the New York State Department of Labor alleging the presence of mold and asbestos at the school that plaintiff alleged led to her suffering a persistent cough while at work in the Remsenburg-Speonk School District.  (Exh. P, NYS Dept. of Labor Compl. Determination ("Exh. P"), ECF No. 58-19.)  On January 7, 2010, plaintiff filed a separate complaint against the School District with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation in violation

---

Third, defendants offered results from "multiple environmental tests" which found an absence of evidence of an environmental cause for plaintiff's complaints: J.C. Broderick & Associates found "no evidence of a significant indoor airborne mold concern" in the special education office on February 18, 2009 (Exh. J at 4, ECF No. 58-13); Enviroscience Consultants did not detect fungi or bacteria in the air ducts of the special education office on April 10, 2009 (Exh. K at 4, ECF No. 58-14); Enviroscience Consultants determined on July 29, 2009 that the District should not undertake a building-wide survey of the staff for respiratory problems, should not conduct further sampling, and should not include plaintiff in the District's respiratory program (Exh. L at 4, ECF No. 58-15.); Enviroscience Consultants detected "elevated microbial levels, the presence of microbial growth, a microbial odor, and elevated relative humidity," when school was not in session, during its August 27, 2009 indoor air quality test, (Exh. M at 5, ECF No. 58-16), but found on October 19, 2009 that cleaning had been successful when testing indicated normal concentrations of common environmental organisms and no visible mold growth within the music room, (Exh. N at 5, ECF No. 58-17); Enviroscience Consultants detected only low microbial levels and no presence of microbial growth from its indoor air quality sampling and inspection of the new speech room on December 28, 2009 (Exh. O at 5, ECF No. 58-18); the New York State Department of Labor found on May 21, 2010 that plaintiff's complaint of mold and asbestos at the school was not sustained, (Exh. P, ECF No. 58-19; Exh. Q, ECF No. 58-20; Exh. R, ECF No. 58-21 (affirming the same on review)), and; at the recommendation of the New York State United Teachers, Olmsted Environmental Services inspected the special education office, the music room, and two classrooms, and found, among other things, that humidity and air contaminant levels were within acceptable limits, and that there were no significant risk factors for mold colonization (Exh. S at 5, ECF No. 58-22).

Given the inadequacy of plaintiff's objection and the existence of multiple environmental expert opinions which deny an environmental cause for plaintiff's complaints, the court finds that there is no genuine dispute of material fact that environmental conditions did not cause plaintiff's illness.

of Title VII of the Civil Rights Act of 1964 ("Title VII") and
the ADA. (Exh. W, EEOC Charge ("Exh. W"), ECF No. 58-26.)[4]

 In November 2010, plaintiff was diagnosed with "mild
obstructive ventilatory defect with improvement after
bronchodilators." (Def. 56.1 Stm't ¶ 7.) The school agreed to
plaintiff's related accommodation requests, including allowing
plaintiff to move offices and wear a respirator, providing
plaintiff with additional recess periods, repainting plaintiff's
office, and re-tiling plaintiff's office ceiling. (*Id.* ¶ 8.)

 Between November 16, 2009 and February 9, 2010, an
industrial hygienist inspected the school for the presence of
mold and asbestos and found that plaintiff's complaint with the
NYS Department of Labor could not be sustained. (Exh. Q, NYS
Dept. of Labor Investigation Narrative ("Exh. Q") at 4, ECF No.
58-20.) The industrial hygienist found several unrelated
Occupational Safety and Health Administration ("OSHA")
violations. (*Id.*) On May 21, 2010, the NYS Department of Labor
concluded that plaintiff's complaint could not be sustained.
(*See* Exh. P.) Plaintiff requested reconsideration, and on July
15, 2010, the Department of Labor affirmed its original

---

[4] Though it was not submitted as evidence, plaintiff alleges in her
complaint that the EEOC issued her a right-to-sue letter on March 24, 2011.
(Am. Compl. ¶ 340.) As defendant offers no contradictory evidence, and
drawing all reasonable inferences in favor of plaintiff, the nonmovant, the
court accepts this as true for purposes of this motion.

determination.   (Exh. R, NYS Dept. of Labor Informal Conf.
Report ("Exh. R") at 2, ECF No. 58-21.)

During the 2010-2011 school year, the School
District's student population decreased to 169 students, from
193 students for the 2009-2010 school year.   (Def. 56.1 Stm't ¶
1.)   This decrease in students coincided with a decrease in
state funding to the School District, which required the School
District to implement budget reductions.   (*Id.* ¶ 2.)   Pursuant
to the decrease in student population and budget reductions, on
June 14, 2010, the Board eliminated three school positions and
reclassified two school positions from full to half-time.   (*Id.*
¶ 3.)   Plaintiff's position of school psychologist was among
those reclassified from full to half-time.   (*Id.*)   Plaintiff
would be responsible for counseling eight students for the 2010-
11 school year: three of those students would participate in
regular mandated counseling sessions as part of their
Individualized Education Programs ("IEP"), while the other five
would attend non-mandatory counseling.   (*Id.* ¶ 4.)   Plaintiff
would prepare annual reports only for the three students with an
IEP.   (*Id.*)

On March 9, 2012, psychiatrist Dr. Randall Solomon
made a preliminary finding that plaintiff was not mentally fit
to continue working in the School District.   (*Id.* ¶ 13; Exh. Y,
Preliminary Psychiatric Report by Dr. Solomon ("Exh. Y") at 1,

ECF No. 58-28.)  On May 29, 2012, after reviewing the records of Dr. Weisler, plaintiff's psychologist, Dr. Solomon reiterated his initial conclusion that plaintiff was not mentally fit to continue working in the School District.[5]  (Def. 56.1 Stm't ¶ 13; Exh. Z, Second Psychiatric Report by Dr. Solomon ("Exh. Z") at 5, ECF No. 58-29.)

On June 14, 2012, the School District filed disciplinary charges against plaintiff for, among other things, failing to supervise students as the assigned lunch monitor on June 22, 2010, leaving confidential student records exposed in public printers on at least seven occasions during 2011, criticizing another teacher to students, and failing to cooperate with a psychiatric fitness evaluation.  (Def. 56.1 Stm't ¶ 14.)  The School District further charged that plaintiff was not mentally fit to continue working for the School District. (*Id.* ¶ 15; Exh. AA, *Matter of Razzano vs. Remsenburg-Speonk Union Free Sch. Dist.*, Index No. 13-16057, Order in Article 75 Proceeding ("Exh. AA") at 3, ECF No. 58-30.)  The arbitration decision of May 31, 2013 finding that plaintiff was

---

[5]     Plaintiff seems to object by quoting a portion of Dr. Solomon's statement: "Although a diagnosis could not be determined . . . ."  (Pl. 56.1 Stm't at ¶ 13.)  Dr. Solomon reported that a diagnosis could not be determined because plaintiff was "poorly cooperative," and asserted that plaintiff "has psychological and emotional difficulties . . . [which] substantially interfere with [her] ability to function appropriately and safely in the workplace."  (Exh. Y.)  Moreover, after Dr. Solomon reviewed plaintiff's psychologist's records, he affirmed his initial conclusion.  (Exh. Z.)  Plaintiff's objection is thus without merit.

not mentally fit was confirmed by the state supreme court in an Article 75 proceeding.  (Def. 56.1 Stm't ¶ 15; Exh. AA at 4.)

## II.  Plaintiff's Article 78 State Court Proceeding Appealing Her Reduction to Half-Time

By administrative petitions dated May 19, 2010, July 13, 2010, and September 28, 2010, plaintiff petitioned the Commissioner of the New York State Department of Education pursuant to New York State Education Law § 310, challenging the School District's reclassification of her position from full to half-time and alleging the existence of "health and safety hazards [at the school], as well as discrimination, retaliation, harassment and hostile work environment."  (Exh. X, NYS Dept. of Ed. Decision ("Exh. X") at 2, ECF No. 56-27; Exh. V, Pl. Pet. to the NYS Dept. of Ed. ("Exh. V") at 2, ECF No. 58-25.)  On April 7, 2017, the Commissioner of Education dismissed plaintiff's petition, finding that plaintiff "failed to meet her burden of proving that [the District] reduced her position in bad faith." (Exh. X at 4-5.)  The Commissioner of Education found that plaintiff "ha[d] not submitted any evidence" to establish her assertion that the school reduced her position from full to half-time in bad faith.  (*Id.* ¶ 12.)

On October 8, 2010, plaintiff appealed the decision of the Commissioner of Education to the New York State Supreme Court of Suffolk County, pursuant to CPLR §§ 7801-7806 ("Article

78"), alleging that the School District's decision to reclassify her position from full to half-time was undertaken in retaliation against her for complaining about the school's hazardous health conditions. *Matter of Razzano v. Remsenburg-Speonk UFSD,* 95 A.D.3d 1335, 945 N.Y.S.2d 713 (2012).  The state supreme court denied plaintiff's petition and dismissed the proceeding, finding that the Commissioner of Education had primary jurisdiction over plaintiff's challenge to the reclassification of her position and the related claim of whether the school board hired an independent contractor to assume her responsibilities in alleged violation of tenure laws. *Id.* at 1337.  On appeal, the Second Department remanded and ordered the state supreme court to determine whether the School District reclassified plaintiff's position in bad faith in violation of Civil Service Law § 75-b, and, if the state supreme court found that plaintiff's position was not reclassified in bad faith, to leave the remaining factual issue of whether an independent contractor assumed some of the responsibilities of the tenured petitioner, over which the Commissioner had primary jurisdiction, to the Commissioner.  *Id.*

On remand, the state supreme court determined on June 27, 2018 that the School District reclassified plaintiff in good faith and was motivated by valid budgetary concerns.  *Razzano v. Remsenburg-Speonk UFSD*, 162 A.D.3d 1043, 1045, 80 N.Y.S.3d 347

(2018).  The state supreme court also affirmed the arbitrator's decision to terminate plaintiff based on the School District's disciplinary charges.  (*Id.* at 1046.)  The state supreme court found that the School District "made every effort to unhesitatingly and reasonably accommodate" plaintiff "time and time again . . . in good faith and without any remarkable reluctance." (Def. 56.1 Stm't ¶ 9.)  The court further found that the school's actions "were undertaken in good faith, and motivated by valid and unavoidable budgetary concerns." (*Id.* ¶ 10; Exh. H, Post-Trial Decision in Article 78 Proceeding ("Exh. H") at 11, ECF No. 58-11.)

In affirming the trial court's finding on June 27, 2018, the Second Department found that the School District's "determination to reclassify [plaintiff's] position [as half-time] was based on valid budget concerns and was not made in bad faith or to retaliate for [plaintiff's] complaints," and that plaintiff's "complaints about the school building were unfounded, but [] the [School District] still made consistent good-faith efforts to address her complaints and provide reasonable accommodations for [her] alleged health issues." (Def. 56.1 Stm't ¶¶ 16-19.)  The Second Department affirmed on appeal, and agreed that the disciplinary proceedings resulting in plaintiff's termination were not "retaliatory in nature." (*Id.* ¶ 20.)  The Second Department further held that there was

"evidence of specific incidents of inappropriate, unprofessional, or insubordinate conduct" on plaintiff's part which demonstrated "a separate and independent basis" for plaintiff's termination.  (*Id.* ¶ 21.)

### III. Plaintiff's Article 75 Proceeding on Appeal from Her § 3020-a Termination

Plaintiff was terminated on June 10, 2013, following a twelve day arbitration.  (Def. Mem. 9.)  On June 19, 2013, plaintiff petitioned, pursuant to CPLR § 7511 ("Article 75"), to vacate a May 31, 2013 arbitration decision pursuant to NYS Education Law § 3020-a ("§ 3020-a") that recommended her termination after the School District filed disciplinary charges against her.  (Exh. AA at 1-2.)  On January 31, 2014, the New York State Supreme Court in Suffolk County affirmed the arbitration decision.  (*Id.* 5.)  On appeal, the Second Department affirmed the judgment of the trial court.  *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, 144 A.D.3d 810, 41 N.Y.S.3d 72 (2016).

### IV. Plaintiff's Instant Federal Action Alleging Violations of the ADA, 42 U.S.C. § 1983, and the NYSHRL

On June 17, 2011, plaintiff commenced the instant federal action against the School District, alleging discrimination and retaliation in violation of the ADA, NYSHRL, and an Equal Protection violation under § 1983.  (*See* Am. Compl.)  This court reviews this federal action, and related

12

motion for summary judgment, on remand, with instruction from the Second Circuit to develop a more robust record. *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.,* 751 F. App'x 24, 28 (2d Cir. 2018).

<u>**LEGAL STANDARD**</u>

I.    **Summary Judgment**

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), *cert denied*, 565 U.S. 1260 (2012). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Summary judgment allows the court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact. *Rojas*, 660 F.3d at 104.  In deciding a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)), *cert. denied,* 534 U.S. 1065 (2001).  A moving party may indicate the absence of a factual dispute by, *inter alia*, "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  Put another way, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Ind. Co.*, 475 U.S. at 587.

Once the moving party has met its burden, "the nonmoving party may not rest upon mere conclusory allegations or denials."  *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010) (citing *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)).  Rather, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

23 (1986)).  In deciding a motion for summary judgment, the court is dutybound not to weigh evidence or assess the credibility of witnesses.  *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).

"Employment discrimination cases raise special issues on summary judgment."  *Kenney v. New York City Dep't of Educ.*, No. 06 Civ. 5770, 2007 U.S. Dist. LEXIS 77926, at *7 (S.D.N.Y. Oct. 22, 2007).  Specifically, employment discrimination cases that involve a dispute concerning the "employer's intent and motivation," may not be suitable for summary judgment. *Id.*; see *also Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The Second Circuit has noted, however, that "we went out of our way to remind district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation and citation omitted); *see also Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 148 (2000) ("trial courts should not 'treat discrimination differently from other ultimate questions of fact'") (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)); *Holcomb*, 521 F.3d at 137 ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

## II.   The ADA and the NYSHRL

The ADA makes it unlawful for an employer to
"discriminate against a qualified individual on the basis of
disability in regard to job application procedures, the hiring .
. . of employees, . . . and other terms, conditions, and
privileges of employment." 42 U.S.C. § 12112(a). To establish a
prima facie discrimination case under the ADA, a plaintiff must
allege that "(1) the defendant is covered by the ADA; (2)
plaintiff suffers from or is regarded as suffering from a
disability within the meaning of the ADA; (3) plaintiff was
qualified to perform the essential functions of the job, with or
without reasonable accommodation; and (4) plaintiff suffered an
adverse employment action because of his disability or perceived
disability." *Kinnery v. City of New York*, 601 F.3d 151, 155-56
(2d Cir. 2010) (citations omitted); *see also Brady v. Wal-Mart
Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). A plaintiff
alleging discrimination under the ADA "must still 'demonstrat[e]
that he suffered an adverse employment action under
circumstances giving rise to an inference of discriminatory
intent.'" *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21
(2d Cir. 2015) (citing *Cortes v. MTA N.Y.C. Transit*, 802, F.3d
226, 231 (2d Cir. 2015)).

The ADA prohibits discrimination against any
"qualified individual on the basis of a disability in regard

16

to," *inter alia*, "the discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The NYSHRL similarly prohibits employers from discriminating against any individual on the basis of disability "in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296(1)(a).  The analysis for disability discrimination under the ADA coincides with the analysis for disability discrimination under the NYSHRL.  *Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 367 (S.D.N.Y. 2018); *see Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000).

### III. 42 U.S.C. § 1983

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and that the deprivation was committed by a person acting under color of law.  *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).  The Second Circuit considers Section 1983 employment discrimination claims under the burden-shifting evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).  Courts typically apply the same standard to discrimination claims brought under NYSHRL.  *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 317 n.2 (2d Cir. 1999).  The Second Circuit has applied the

*McDonnell Douglas* burden shifting test to require a plaintiff
establish that "(1) she is a member of a protected class; (2)
she is qualified for her position; (3) she suffered an adverse
employment action; and (4) the circumstances give rise to an
inference of discrimination." *Vega v. Hempstead Union Free Sch.
Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).

## DISCUSSION

### I.   Plaintiff's Abandonment of Claim under 42 U.S.C. § 1983

As an initial matter, plaintiff's Equal Protection
claim fails legally and procedurally.  Class-of-one equal
protection claims are not recognized in the public employment
context.  *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591
(2008).  "[A] public employee does not state a claim under the
Equal Protection Clause by alleging that he or she was
arbitrarily treated differently from other similarly situated
employees unless the different treatment was based on the
employee's membership in any particular class." *Porr v. Daman*,
299 F. App'x 84, 86 (2d Cir. 2008)(citing *Engquist*, 128 S.Ct. at
2155-56).  Plaintiff fails to plead or introduce any admissible
evidence in her responsive submission pursuant to Local Rule
56.1 to demonstrate that she was treated differently than any
similarly situated employee, nor does she offer any argument
rebutting defendants' contention to this effect in her
responsive memorandum of law.  "[I]n the case of a counseled

18

party, a court may, when appropriate, infer from a party's
partial opposition [to summary judgment] that relevant claims or
defenses that are not defended have been abandoned." *Jackson v.
Fed. Express.*, 766 F.3d 189, 198 (2d Cir. 2014); *accord Kovaco
v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir.
2016) (hostile work environment claims deemed abandoned where
plaintiff "fail[ed] to argue that they should survive
[defendant's] motion for summary judgment" while arguing against
the motion as to his other claims); *Grassel v. Dep't of Educ. of
City of N.Y.*, No. 12 CV 1016, 2015 WL 5657343, at *9 (E.D.N.Y.
Sept. 24, 2015) ("When a party opposing summary judgment fails
to respond to the moving party's argument on a claim, the Court
may deem the claim abandoned"); *Taylor v. City of New York*, 269
F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a
claim abandoned when a party moves for summary judgment on one
ground and the party opposing summary judgment fails to address
the argument in any way").  Plaintiff's response raises her
Section 1983 claim only once, in a citation to her original
complaint, with no attendant facts or legal argument in
opposition to defendant's motion.  (Pl.'s Mem. of Law in Opp. to
Defs.' Mot. for Sum. J. ("Pl. Opp.") at 4, ECF No. 59.)  The
court deems plaintiff's Equal Protection claims, alleged
pursuant to 42 U.S.C. § 1983, abandoned, and GRANTS defendants'
summary judgment motion on this claim.

## II.   Preclusion

The court next turns to plaintiff's claims of discrimination, retaliation, and hostile work environment under the ADA and NYSHRL. Defendants' motion for summary judgment raises the doctrines of *res judicata*, collateral estoppel, and on the substantive basis that plaintiff does not state a claim under the ADA or NYSHRL. Both preclusion doctrines are affirmative defenses and may be properly considered in a summary judgment motion when raised by defendant. *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999); *see also Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000).  The Second Circuit has explained that "the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999).

### A. Claim Preclusion

*Res judicata*, or claim preclusion, bars a party or its privies from relitigating issues that were or could have been raised in a prior action decided by a final judgment on the merits. *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000). Federal courts are to give "the judicial proceedings of any [State] court" the "same full faith and credit . . . as they have by law or usage in the courts of such State." 28 U.S.C. § 1738; *see also Burka v. N.Y.C. Transit Auth.*, 32 F.3d 654, 657

20

(2d Cir. 1994) ("[A] state court judgment has the same preclusive effect in federal court as the judgment would have had in state court.").  Therefore, a New York state judgment must be given the same preclusive effect in this court as it would have within New York's courts. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985); *see also Brown v. N.Y.S. Supreme Court for Second Judicial Dist.*, 680 F. Supp. 2d 424, 428 (E.D.N.Y. 2010); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("[T]here is no discernable difference between New York and federal claim preclusion law.").

Under New York law, there are four elements to the doctrine of res judicata: (1) there must be a final judgment in the first action; (2) that was rendered "on the merits;" (3) between the same parties in both actions; and (4) concerning the same claims in both actions. *In re Hunter*, 4 N.Y.3d 260, 269 (N.Y. 2005).  New York takes a "transactional approach to res judicata" such that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Sosa v. JP Morgan Chase Bank*, 822 N.Y.S.2d 122, 124 (N.Y. App. Div. 2006) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, (N.Y. 1981)).  "A dismissal 'with prejudice' generally signifies that the court intended to dismiss the action 'on the merits,'

that is, to bring the action to a final conclusion against the plaintiff." *Yonkers Contracting Co., Inc. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375, 380 (N.Y. 1999).  The party asserting the defense of res judicata bears the burden of showing "the existence of a prior judgment on the merits." *Miller Mfg. Co., Inc. v. Zeiler*, 45 N.Y.2d 956, 958, (N.Y. 1978).  "A prior order that does not indicate an intention to dismiss the action on the merits is not a basis for the application of the doctrine of res judicata." *Espinoza v. Concordia Int'l Forwarding Corp.*, 32 A.D.3d 326, 328 (N.Y. App. Div. 2006).

Defendants' motion fails on claim preclusion grounds, as plaintiff raises claims of discrimination, retaliation, and hostile work environment under the ADA and NYSHRL.  As a result, the fourth prong of claim preclusion analysis is not satisfied. The new claims plaintiff raises are not "the same claims" raised "in both actions." *Hunter*, 4 N.Y.3d 269.  As the Second Circuit noted in a discussion of plaintiff's appeal of the § 3020-a decision in the Article 75 state court proceeding, "neither the administrative hearing officer nor the Appellate Division had the power to rule on the discrimination claims, as Razzano had not raised them in the disciplinary proceeding or in her petition challenging the decision." *Razzano*, 751 F. App'x 104.

i.   **Article 78 Proceeding**

Furthermore, in her Article 78 petition, plaintiff sought reinstatement to her full-time position and compensation for economic benefits and consequential damages lost.  In her complaint to this court, she sought monetary damages under the ADA and the NYSHRL.  As the trial court in an Article 78 proceeding did not have the power to award the full extent of damages now sought, *see Razzano*, 751 F.3d at 104, this court finds that plaintiff's present action is not claim precluded by her Article 78 proceeding.

An Article 78 proceeding generally does not preclude a subsequent § 1983 proceeding. *See* Davidson v. Capuano, 792 F.2d 275, 278–80 (2d Cir. 1986. This is because the type of damages sought pursuant to § 1983 are typically not available in Article 78 proceedings, which allow only recovery of incidental damages. *Corbett v. City of New York,* 816 F. App'x 551, 553–54 (2d Cir. 2020) (citing *Davidson*, 792 F.2d at 278–80).  A petitioner's ability to recover damages in an Article 78 proceeding is constrained: such damages must be (1) "incidental to the primary relief sought," and (2) "otherwise recover[able] on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity."  CPLR § 1706; *Burgos v. Hopkins*, 14 F.3d 787, 791 (2d Cir. 1994); *Monclova v. City of New York*,

23

No. 13-CV-7261(KAM)(ST), 2017 WL 5495804, at *15 (E.D.N.Y. Mar. 31, 2017), *aff'd,* 726 F. App'x 83 (2d Cir. 2018).  Damages for civil rights violations are generally not "incidental" damages recoverable in an Article 78 proceeding.  *Davidson*, 792 F.2d at 278; *see also Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004) ("New York's claim preclusion rule does not apply because a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in subsequent section 1983 litigation."); *Antonsen v. Ward*, 943 F.2d 198, 204 (2d Cir. 1991) (Article 78 proceeding did not preclude later claims for damages under the NYSHRL); *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 473 (E.D.N.Y. 2019) (Article 78 proceeding did not preclude later claims for damages under § 1983); *Frierson-Harris v. Hough*, No. 05-CV-3077, 2006 WL 3511881, at *1 (S.D.N.Y. Dec. 6, 2006), aff'd, 328 F. App'x 753 (2d Cir. 2009) (Article 78 proceeding did not preclude later claims for damages under § 1981); *but see Powell v. Ward,* 643 F.2d 924, 934 (2d Cir. 1981) ("A prior state proceeding, including an Article 78 proceeding, will preclude relitigation of a civil rights claim in a federal court if the state proceeding reached the federal constitutional issues involved.").

It follows that an Article 78 proceeding generally will not have claim preclusive effect if the relief sought in

the later action is damages for a civil rights violation. In this case, plaintiff's Article 78 claims do not preclude her present claims even though they are based on substantially the same events, as she did not seek the same remedy.  The damages that plaintiff now seeks under the ADA, § 1983, and the NYSHRL are not "incidental" to the relief she sought through her Article 78 action.

Defendants' motion for summary judgment based on claim preclusion is denied. The court next analyzes defendants' motion under the defense of issue preclusion.

### B. Issue Preclusion

In remanding this action, the Second Circuit held that the "Section 3020-a proceeding resulting in Razzano's termination was an administrative adjudication that must be given [issue] preclusive effect...only if (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Razzano*, 751 F. App'x 26 (internal citations and quotations omitted). The court finds that essential elements of plaintiff's claims of disability discrimination and retaliation pursuant to the ADA and the NYSHRL are issue precluded, and as a result, summary judgment is granted to defendants on previously decided issues.

25

The doctrine of collateral estoppel, or issue preclusion, "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455-56 (N.Y.1985)); *see also Leather*, 180 F.3d at 425-26. "Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state-court judgments the same preclusive effect as they would receive in courts of the same state." *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)).

### i. The Issues Raised in the § 3020-a Hearing Are Identical to Those in the Instant Case

The issues raised in plaintiff's § 3020-a hearing concerning the bases for her termination are identical to those raised in this case. The Second Circuit found that defendants had not met their evidentiary burden in arguing that the § 3020-a administrative termination proceeding had an issue preclusive effect. *Razzano*, 751 F. App'x 27. The circuit agreed with defendants' concession that "without the [§] 3020-a decision or

26

transcript, we cannot determine the nature and/or scope of [plaintiff's] arguments in her defense, and cannot conclude with certainty the extent of the identity of the issues which would require preclusion." *Id.* Thus, the Second Circuit held that issue preclusion dismissal was premature, insofar as defendants proferred only the Second Department decision in *Razzano*, 144 A.D.3d 819, 41 N.Y.S.3d 72 (2d Dep't 2016) (affirming the trial court's decision to leave the arbitration judgment in place). *Id.* In support of their instant motion for summary judgment, defendants now proffer plaintiff's petition in the Article 75 proceeding challenging the § 3020-a decision, *see* Exh. B(2), the trial court decision affirming the arbitration finding, *see* Exh. AA, and Dr. Solomon's medical records from his examinations of plaintiff. (*See* Exhs. Y and Z; s*ee also* Def. Mem. at 14-16; Def. Reply at 8.)

The § 3020-a hearing and Article 75 appeal concerned whether there was just cause for plaintiff's termination. Plaintiff states in her petition accompanying her Article 75 challenge to the § 3020-a proceeding that, at her § 3020-a hearing and in her challenge to the proceeding, plaintiff raised as a defense that defendants' conduct was motivated by discriminatory and retaliatory animus. (*See* Exh. BB, Plaintiff's petition in support of her Article 75 proceeding, *In Re Razzano v. Remsenburg-Speonk Union Free School District*, 2013

27

WL 12186140 ("Exh. BB"), ECF No. 60-2 at ¶ 19 ("[t]he dismissed specifications also confirm the motive of Respondent to retaliate against me and to deprive me of fundamental fairness"), ¶ 117 ("[t]he arbitrator's assertion that my retaliation claim 'is not borne out by the evidentiary record in the instant case' is simply not sustainable"), ¶ 123 ("my position was being reduced 'due to retaliation because of my protected activity and I am being discriminated against due to my disability.'").)

     In the instant action, plaintiff contends that her alleged disability led to her termination and that the school did not accommodate her condition, whereas defendants argue that plaintiff's position was reduced due to budget cuts, and ultimately terminated due to issues with her performance. The identity of issues that are the bases for termination of employment has been held sufficient to satisfy the first prong of the collateral estoppel inquiry. *Ferraro,* 404 F. Supp. 708, *aff'd,* 752 F. App'x 70 (2d Cir. 2018) (citing *Mohammed v. New York City Dep't of Educ.*, 932 F. Supp. 2d 420, 428 (E.D.N.Y. 2013) (finding identity of issues where issue of whether Plaintiff's termination was based on impermissible considerations or performance concerns was raised in 3020-a hearing).) Plaintiff raised the issues of discrimination and

retaliation in the underlying proceeding.  As a result, the
court finds that the first prong is satisfied here.

### ii. Whether the Issues Were Actually Litigated and Actually Decided

"[W]here a federal claim was previously raised as a
central defense, a hearing officer necessarily decided the claim
for purposes of collateral estoppel." *Ferraro,* 404 F. Supp. 708,
*aff'd,* 752 F. App'x 70 (2d Cir. 2018)(citing *Mazur v. N.Y. City
Dep't of Educ.*, 53 F. Supp. 3d 618, 631 (S.D.N.Y. 2014)
("[p]laintiff's claims of age and disability discrimination were
necessarily decided in the 3020-a hearing in order to support a
final judgment because they were her central defenses."), *aff'd*,
621 Fed.Appx. 88 (2d Cir. 2015).)  Here, the remaining claims at
issue in the instant action are disability discrimination,
retaliation, and hostile work environment.  Though the
transcripts of the 3020-a proceeding itself are not before the
court, a review of plaintiff's petition challenging the 3020-a
proceeding reveals the issues that were submitted for the
hearing officer's determinations.  (*See* Exh. BB.)

As described by plaintiff, in the underlying 3020-a
hearing, "a key issue was the legitimacy of [her] ailments."
*Id.* at ¶ 89.  Hearing Officer Robert Simmelkjaer found that
plaintiff "selectively excerpted and misconstrued portions of
her doctors' reports in order to attribute her respiratory

29

condition solely to the so-called 'sick-building syndrome'" and "concurred in the argument" made by defendants that plaintiff's beliefs about her illness "were symptomatic of an underlying psychological incapacity." *Id.* at ¶¶ 89, 90.  On the issue of whether the School District retaliated against plaintiff, the "arbitrator conclu[ded] that [plaintiff] did not establish a '*bona fide* defense' under Civil Service Law § 75-b" and "assert[ed] that [plaintiff's] retaliation claim 'is not borne out by the evidentiary record in the instant case.'"  *Id.* at ¶ 117.

On appeal to New York State Supreme Court pursuant to Article 75, the court affirmed the hearing officer's determinations in the § 3020-a proceeding.  First, the court noted that the school district terminated plaintiff based on her sustaining nine specifications under charge I, "Conduct Unbecoming a Teacher," nine specifications under charge II, "Neglect of Duty," seven specifications under charge III, "Insubordination," and six specifications under charge V, "Physical/Mental Disability."  (Exh. AA at 2.)  The court then outlined the hearing officer's findings under each of these charges.  (*Id.* at 2-3.)  Finally, in concluding that the hearing officer's decision was rational and had a plausible basis, the court quoted the hearing officer's opinion that "the evidence in its entirety [persuaded the hearing officer] that [plaintiff]

has exhibited a pattern of behavior which proves that she is mentally unfit to continue her duties as a School Psychologist, in the [school district] . . . [and that] the pattern of [her] aberrant behavior, as distinguished from isolated incidents, supported the District's decision to refer her for a Section 913 examination to ascertain her fitness for duty." (*Id.* at 4.) The state supreme court, Suffolk County, affirmed that the 3020-a hearing officer's finding that the arbitrator's decision was rational and had a plausible basis. *Id.*

On appeal, the Second Department affirmed that, as in plaintiff's case, where the arbitrator found that "there is evidence of specific incidents of inappropriate, unprofessional, or insubordinate conduct which are found to demonstrate a separate and independent basis for the action taken, a defense under Civil Service Law § 75–b cannot be sustained." *Razzano,* 144 A.D.3d at 811. "Furthermore, the record demonstrates that the arbitrator properly rejected the petitioner's defense that the disciplinary proceedings were retaliatory in nature." *Id.* at 810 (internal citations omitted). Thus both the state supreme court and the Appellate Division affirmed that the arbitrator's finding in the 3020-a proceeding rejecting plaintiff's defense that the School District's disciplinary charges against plaintiff were not discriminatory or retaliatory

had a rational basis, was supported by ample evidence, and was not arbitrary or capricious. *Id.* at 810-11.

On this record, the court is satisfied that plaintiff's retaliation and discrimination claims were actually raised and decided at the § 3020-a hearing. The record, however, further reveals that plaintiff's hostile work environment claim was not actually litigated in the § 3020-a hearing.

### iii. Full and Fair Opportunity to Litigate and Necessary to Support Judgment on the Merits

The state supreme court decision notes that plaintiff was represented by counsel at the 3020-a hearing and given the opportunity to testify;[6] that witnesses and medical experts testified; and that parties presented 100 exhibits. (Exh. AA at 2, 4.) Plaintiff does not dispute or proffer any contrary evidence. The hearing occupied a total of twelve days over a six-month period, and the hearing officer's decision analyzing the evidence and the arguments was 69 pages long. *Id.* at 1-2. The court finds that such procedure satisfies the full and fair opportunity element. *See Ferraro,* 404 F. Supp. 708, *aff'd,* 752

---

[6]      The 3020-a hearing officer noted that plaintiff's "responses to questions posed *by either attorney* were often rambling . . . ." (Exh. AA at 4) (emphasis added). The court accepts the hearing officer's statement regarding plaintiff's opportunity to litigate. In reference to the proceeding, plaintiff's counsel claims in her opposing brief that "we do not know if she was actually represented by counsel or she proceed [sic] pro se." (Pl. Opp. at 11.) This statement is insufficient to dispute evidence that plaintiff had a full opportunity to litigate in the 3020-a hearing prior to the decision on the merits.

F. App'x 70 (2d Cir. 2018); *Mohammed*, 932 F. Supp. 2d at 428
(fair opportunity to litigate satisfied where parties were
represented by counsel, with "robust" opportunity to present
evidence); *Smith v. N.Y. City Dep't of Educ.,* 808 F. Supp. 2d
569, 580-81 (S.D.N.Y. 2011) (full and fair opportunity to
litigate found where plaintiff was represented by counsel over
multiple-day hearing involving examination and cross-examination
of witnesses and introduction of evidence).  Accordingly, this
court finds that plaintiff had a full and fair opportunity to
litigate the issues of whether the disciplinary charges against
her and resulting termination of her employment were
discriminatory or retaliatory and whether she was otherwise
qualified for her position as school psychologist.

    In sum, the issues regarding plaintiff's allegation of
retaliation and discrimination satisfy all four prongs of the
collateral estoppel analysis, and are therefore precluded.

### C. Hostile Work Environment

    Plaintiff's hostile work environment claim survives to
this stage of the analysis as it is not otherwise precluded by
res judicata or collateral estoppel.  However, because plaintiff
offers no evidence in support of her hostile work environment
claim in her 56.1 statement or legal argument opposition brief,
summary judgment is granted and her claim must be dismissed.

"Hostile work environment claims under Title VII and the NYSHRL are governed by the same standard." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). "To establish a *prima facie* case of hostile work environment, the plaintiff must show that the discriminatory harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and 'that a specific basis exists for imputing' the objectionable conduct to the employer." *Id.* (citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Id.* (citing *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

To determine whether a work environment is sufficiently hostile, "courts consider the totality of the circumstances, including such factors as '(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted.' " *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 152 (E.D.N.Y. 2002) (citing *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 437 (2d Cir. 1999)). "The incidents at issue must be 'more than

episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Bacchus v. New York City Dep't of Educ.*, 137 F. Supp. 3d 214, 240 (E.D.N.Y. 2015) (citing *Das v. Consolidated School Dist. of New Britain*, 369 F. Appx 186, 190 (2d Cir. 2010)).

Defendants argue that there are no "interactions that would even arguabl[y] constitute a hostile work environment." (Def. Mem. 19.)  As plaintiff offers no counterargument or evidence to support her hostile work environment claim, she has failed to establish a *prima facie* case, and furthermore has abandoned her claim.  "When a counseled party moves for summary judgment, 'a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.'" *Kovaco v. Rockbestos-Surprenant Cable Corp.,* 834 F.3d 128, 143 (2d Cir. 2016)(quoting *Jackson v. Fed. Exp.,* 766 F.3d 189, 194 (2d Cir. 2014)).  The court recognizes that "an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions," *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001).  Plaintiff, however, offers nothing from which a jury could find a hostile work environment.  "In

order to survive summary judgment on a claim of hostile work environment harassment, a[n employee] must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000), *superseded by statute on other grounds*, Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85 (internal quotation marks omitted) (analyzing claims brought *inter alia* under Title VII and § 1981). Despite plaintiff's failure to offer evidence demonstrating a hostile work environment in her 56.1 filing, the court's "assiduous review of the record" before the court failed to produce evidence, direct or circumstantial, that would prove plaintiff's claim. *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir.2000) (internal citations and quotation marks omitted). As a result, defendant's motion for summary judgment is granted on plaintiff's hostile work environment claim.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted in its entirety.  The Clerk of Court is respectfully requested to enter judgment for defendants and close this case.

**SO ORDERED**

Dated:    September 30, 2020
          Brooklyn, New York

                                              /s/
                                   _____
                                       KIYO A. MATSUMOTO
                                  United States District Judge
                                  Eastern District of New York